UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICE ALICE LaPORT,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 12-12398

HON. JOHN CORBETT O'MEARA
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Patrice Alice LaPort brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On December 18, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of March 15, 2006 (Tr. 172). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on December 18, 2008 in front of Administrative Law Judge ("ALJ") Larry Meuwissen (Tr. 69). On March 2, 2009, ALJ Meuwissen found Plaintiff capable of performing her past relevant work (Tr. 102). On August 7, 2009, the Appeals Council remanded the case to the ALJ, finding that the Dictionary of Occupational Titles ("DOT") listing cited by the Vocational Expert ("VE")

1

as Plaintiff's past relevant work exceeded the Residual Functional Capacity stated in the administrative decision (Tr. 104-105). The Appeals Council directed the ALJ to take additional vocational testimony, obtain medical evidence from an orthopaedic expert, and supplement the file with Plaintiff's recent treating records (Tr. 105). The case was reassigned to ALJ Lawrence E. Blatnik who held a second administrative hearing March 23, 2010 (Tr. 30). Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 34-56), as did VE Sandra Steele (Tr. 56-67). On June 11, 2010, ALJ Blatnik found that Plaintiff was capable of performing her past relevant work (Tr. 24). On April 30, 2012, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the final decision on June 1, 2012.

## BACKGROUND FACTS

Plaintiff, born January 5, 1954, was 56 when ALJ Blatnik issued his decision (Tr. 24, 172). She completed 12th grade and worked previously as an assembler and shuttle driver (Tr. 204, 209). She alleges disability as a result of migraine headaches and back and neck injuries (Tr. 203).

### A.   Plaintiff's March 23, 2010 Testimony[1]

Plaintiff offered the following testimony:

She currently lived in Lansing, Michigan in a single family home (Tr. 35). She received $414.10 in Worker's Compensation each week in addition to a monthly pension payment of $3,124 (Tr. 35). She also received medical coverage as part of her pension package (Tr. 36).

---

[1] Because Plaintiff offered comprehensive testimony at the March 23, 2010 hearing (Tr. 34-56), discussion of her previous hearing testimony is omitted from discussion.

She currently held a valid driver's license but drove only a few times each month (Tr. 37). She was able to grocery shop independently and visited her three grandchildren in the next town frequently (Tr. 38). She tried to avoid picking up her grandchildren due to lifting difficulties (Tr. 38). She denied any criminal history (Tr. 39). After injuring her back in 2002, she was moved from an assembly position to driving a shuttle van (Tr. 39). Her assembly job required her to be on her feet most of the day and lift up to 20 pounds (Tr. 40).

The position of shuttle van driver required her to drive people from one plant to another or in the event of an injury, to the hospital (Tr. 41). She was unable to perform the job as of early 2006 when her travel routes included pot hole-filled roads which aggravated her back condition (Tr. 42-43). In the shuttle driver position, she denied lifting items or performing any other activities besides driving, stating that "[her] sole purpose was just to be kind of like a taxi driver" (Tr. 44). She currently experienced neck, hip, and leg pain (Tr. 45). Her most recent back surgery also created foot problems (Tr. 45). She experienced problems turning her head but denied neck surgeries (Tr. 46). The most recent of her three back surgeries was in 2000 (Tr. 46). She had recently begun taking Lortab for pain relief in place of her previous medication of Ultram (Tr. 48). She experienced the side effect of drowsiness (Tr. 48).

Plaintiff alleged that she was unable to walk more than half an hour, stand for more than 45 minutes, or sit for more than an hour (Tr. 49). She could lift a gallon of milk but was unable to lift a 20-pound bag of dog food (Tr. 49). She experienced difficulty bending from the waist (Tr. 49). She denied alcohol use and was trying to quit smoking (Tr. 50). She took Flexeril to avoid sleep disturbances (Tr. 50). She did not experience significant problems caring for herself, preparing meals, or doing laundry, but was unable to vacuum (Tr. 51). She used the internet to send pictures and connect with out-of-town friends (Tr. 52). She was

able to garden for short periods (Tr. 53). She alleged that even if she had not been forced to drive over bumpy roads in March, 2006, back problems would have forced her to quit working (Tr. 53).

In response to questioning by her attorney, Plaintiff reiterated that her pain medication caused the side effect of drowsiness (Tr. 55). In addition to her physical problems, she experienced depression for which she took Lexapro prescribed by a family doctor (Tr. 55). As a result of depression, she was tired all the time and experienced lapses in concentration (Tr. 55-56). She had not sought mental health treatment (Tr. 55).

### B.  Medical Evidence

#### 1. Treating Sources

A January, 2006 MRI of the lumbar spine showed a "small recurrent disc herniation involving the descending right nerve root and on the left, a disc bulge involving the S1 and L5 nerve roots (Tr. 240, 309, 317). Thodore C. Delacruz, M.D. noted that Plaintiff had recently injured her back driving over a pot hole (Tr. 256). The report states that the lumbar spine was "otherwise[] stable" (Tr. 240, 310). A March, 2006 MRI showed spondylosis of the cervical spine with foraminal narrowing but no abnormalities of the thoracic spine (Tr. 242, 319-320). Plaintiff reported to Edmund Messina, M.D. that she experienced insomnia only when her back hurt (Tr. 274). In May, 2006, Plaintiff discontinued physical therapy, noting that her lower back was better but neck and upper back pain was worse (Tr. 244). As a result of the physical therapy, Plaintiff reported that right lower extremity symptoms, sleep patterns, and the ability to sit were all significantly improved (Tr. 244). The same month, EMG studies of the right lower extremity were negative for abnormalities (Tr. 260). Neurologist John D. Karakitsos, M.D. recommended physical therapy and other nonsurgical treatment (Tr. 259). The same month, Dr. Delacruze noted that the L5-S1 herniation was

"very small" (Tr. 255).

In July, 2006, Alan D. Neiberg, M.D. referred Plaintiff to a pain management specialist (Tr. 297). A physical examination by Dr. Neiberg was otherwise unremarkable (Tr. 295-298, 313). The same month, Camala A. Riewssinger, Ph.D. conducted a one-time psychological evaluation, noting Plaintiff's reports of mild depression and moderate fatigue (Tr. 290). She recommended three individual sessions for the purpose of improved sleep and pain reduction (Tr. 291). In September, 2006, Dr. Messina noted that Plaintiff found medication prescribed for headaches "very effective" (Tr. 268, 426). She reported that her cervical pain was "mild" (Tr. 268). The following month, she reported good results from a recent series of epidural injections (Tr. 280, 282, 286, 288, 292). In November, 2006, Plaintiff reported good results from recent radio-frequency treatment for lumbar spine pain (Tr. 277). Marc E. Silverstein, M.D. noted that Plaintiff was alert and fully oriented with a normal affect (Tr. 277).

In February, 2007, nerve conduction studies and EMG testing of the upper extremities were negative for radiculopathy (Tr. 373, 375-376). The same month, an MRI of the cervical spine showed "no significant interval change" from the March, 2006 study (Tr. 242, 319-320, 378). In July, 2007, neurologist David W. Spight, D.O. recommended steroid injections for treatment of cervical spine pain (Tr. 364). He found Plaintiff "negative" for anxiety, depression or other psychiatric treatment (Tr. 364). She demonstrated a normal gait and a good range of shoulder motion but some cervical spine tenderness (Tr. 364). The same month, Plaintiff stated that she was disinclined to undergo cervical spine surgery, noting that her condition had improved with physical therapy (Tr. 365). September and December, 2007 steroid injections to the cervical spine were performed without complications (Tr. 398-400). December, 2007 treating notes state that Plaintiff was currently taking Lexapro, Flexeril, and

5

Ativan for back pain and psychological symptoms (Tr. 406). Plaintiff opined that symptoms of depression were attributable to neck pain (Tr. 407).

A January, 2008 examination by Dr. Neiberg was negative for physical or psychological symptoms (Tr. 390-392). In August, 2008, Dr. Neiberg performed a routine checkup, noting a normal gait and full range of motion in all joints (Tr. 381-382). A medication list dated February 11, 2010 indicates that Plaintiff was currently taking Chantix, Ultram, Ativan, Lexapro, and Flexeril (Tr. 431).

### 2. Non-Treating Sources

In February, 2007, Brandie Selbig performed a non-examining Physical Residual Functional Capacity Assessment of Plaintiff's treating records on behalf of the SSA (Tr. 323-330). She found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for a total of six hours each workday; and push and pull without limitation (Tr. 324). She cited treating records stating that Plaintiff did not require the use of a cane (Tr. 325). She found that Plaintiff could climb, stoop, kneel, crouch, and crawl occasionally and balance frequently (Tr. 325). She found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 327). Selbig noted that Plaintiff's headaches were controlled with medication (Tr. 328).

The same month, 2007, Steven Seiger, Ph.D. performed a consultative psychological examination of Plaintiff on behalf of the SSA (Tr. 331-335). Plaintiff reported panic attacks, depression, and sleep disturbances (Tr. 331). She indicated that she was a recovering alcoholic (Tr. 332). Plaintiff reported outpatient mental health treatment in the "mid 1990s" (Tr. 332). She currently lived with a platonic male friend who was helping her pay her bills (Tr. 332). Dr. Seiger observed that Plaintiff was fully oriented but "moderately anxious and

mildly depressed" (Tr. 333-334). Dr. Seiger assigned Plaintiff a GAF of $56^2$ with a "guarded" prognosis (Tr. 335). He opined that her psychological symptoms would be improved with mental health treatment (Tr. 335).

The following month, Ashok Kaul performed a non-examining Psychiatric Review Technique, finding the presence of depression, anxiety, and alcohol dependence (Tr. 338, 341, 343, 346). Under the "'B' Criteria," Kaul found that Plaintiff experienced mild restrictions in activities of daily living and social functioning and *moderate* difficulties in concentration, persistence, or pace (Tr. 348). Kaul also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate difficulties in maintaining attention and concentration for extended periods; working in coordination with others; and responding appropriately to workplace changes (Tr. 353). He concluded that Plaintiff was "able to remember and carry out simple instructions on a sustained basis" (Tr. 354).

### C. Vocational Expert Testimony

VE Sandra Steele classified Plaintiff's former work as a an assembler as unskilled at either the light or medium exertional level and work as a shuttle driver as sedentary/unskilled$^3$ (Tr. 58-59, 238). The VE found that Plaintiff's work as a driver, as

---

$^2$
A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR*), 34(4th ed.2000).

$^3$20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

described, did not comport with a DOT listing but was most similar to the job entitled "escort vehicle driver," which was sedentary/unskilled (Tr. 58-59). The ALJ then posed the following hypothetical question to the VE:

> [A]ssume we have an individual that cannot lift or carry more than 20 pounds occasionally and 10 pounds frequently. Let's assume that during an eight-hour workday, the individual could sit, stand, or walk all for at least six hours. She would be limited to only occasional climbing of any sort, as well as only occasional stooping, kneeling, crouching, crawling, or squatting; frequent, but not constant, balancing; also, occasional bending, only occasional bending, twisting, or turning of the neck, or of the back, at the waist. Actually, let's just limit it for right now to the neck. And we would also restrict the person to simple, unskilled work with an SVP rating of 1 or 2, work that does not require working in close proximity to coworkers, work that does not require frequent significant changes or adaptions, work that does not involve meeting production quotas or goals, or keeping pace with coworkers. Could an individual with those limitations do any of this claimant's past relevant work? And I guess we're primarily focusing on the shuttle driver position (Tr. 60).

(Tr. 60). The VE stated that aside from preclusion on "close proximity to coworkers," the hypothetical limitations would not prevent the performance of Plaintiff's former job as a shuttle driver (Tr. 60). The VE found further that if the lifting requirements stated above were reduced to "10 pounds occasionally [and] less than 10 pounds frequently, her findings would remain unchanged (Tr. 60-61). However, the VE found that the inclusion of a "sit/stand option" allowing a change of position every 45 to 60 minutes would preclude the shuttle driver job (Tr. 61).

The VE stated that if the original hypothetical question, describing a range of exertionally light work, were amended to include the sit/stand option described above, the individual could perform the work of an administrative support clerk (2,100 jobs in the regional economy); general office clerk or general clerical worker (7,500); and cashier (5,500) (Tr. 62). She stated that the job findings and numbers were consistent with the information found in the DOT, adding that she also relied on statistical reports from United States Statistical Publishing, Bureau of Labor Statistics, and the Department of Michigan

Consumer Industry Services (Tr. 63).

The VE testified that if the need for frequent rest breaks were added to any of the above hypothetical questions, all work would be precluded (Tr. 64). In response to questioning by Plaintiff's counsel, the VE stated that the shuttle driver position, as described, did not require her to be in close proximity with others "very often" (Tr. 67).

### D.     The ALJ's Decision

Citing Plaintiff's medical records and testimony, ALJ found that Plaintiff experienced the severe impairments of "status post lumbar laminectomies; degenerative disc disease of the cervical and lumbar spine; headaches; a depressive disorder; an anxiety/panic disorder; [and] a history of alcohol abuse, in sustained remission" but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 17, 20). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> She can occasionally climb ladders, scaffolds, ropes, ramps or stairs; she can occasionally stoop, crouch, kneel, crawl or squat; she can frequently, but not constantly, balance; she can occasionally bend, twist or turn at the neck. In addition, the claimant is limited to simple unskilled work with an SVP rating of 1or 2; routine work that does not require frequent significant changes or adaptations; and work that does not involve meeting production quotas or goals, or keeping pace with co-workers

(Tr. 21). Consistent with the VE's final job findings (Tr. 52), the ALJ determined that Plaintiff was capable of returning to her work as a shuttle driver as previously performed (Tr. 23).

The ALJ discounted Plaintiff's claims of disabling fatigue, noting that the treating records did not show that she experienced significant side effects (Tr. 22). He also noted that Plaintiff's headaches were well controlled with medication (Tr. 22). He cited imaging

9

studies showing that the lumbar spine problems did not significantly involve the nerve root (Tr. 22). He noted that none of Plaintiff's treating sources had opined that she experienced greater limitations than those found in the RFC (Tr. 22). The ALJ found that restrictions of the back and neck did not prevent Plaintiff from engaging in a wide variety of regular activities, including driving, gardening, shopping, taking care of her dogs, visiting her grandchildren, reading, and taking short walks (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**[4]

**The Vocational Testimony**

Plaintiff disputes the finding that she could perform her past relevant work as a shuttle driver. *Plaintiff's Brief* at 8-13, *Docket #10*. She begins by arguing that the ALJ impermissibly "delegated" his authority to the VE in making the Step Four finding. *Id.* at 8. On a related note, she argues the choice of hypothetical limitations posed to the VE did not reflect her own condition but rather, were calculated to elicit testimony that she was

---

[4]Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002).

capable of performing the shuttle driver position. *Id.* at 13.

At Step Four of the sequential analysis, the Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82–61, 1982 WL 31387, *2. If so, the claimant is not disabled. If not, only then will the Commissioner be required to consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* Thus, the fact that Plaintiff's former work, as actually performed, did not comport precisely with the functional demands of any of the jobs listed in DOT does not undermine the Step Four finding.

Plaintiff's argument that the ALJ did not abide by the requirements of SSR 82-62 in making the Step Four finding is also without merit. In making the Step Four determination, a three-prong test must be met in order to find that a claimant can return to his past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386,*2. Plaintiff appears to object to the ALJ's use of the vocational testimony in determining whether she was capable of returning to her past relevant work. However, the ALJ was permitted to consult the VE in making the Step Four finding that Plaintiff could return to her former work. *Studaway v. Secretary of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart*, 78 Fed. Appx. 808, 813–814, 2003 WL 22430186, *4 (3rd Cir. October 27, 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). While "'the ultimate responsibility for making the necessary findings at step 4 rests with our adjudicators, we believe that it is appropriate for our adjudicators to consider evidence from a VE, VS . . ." *Merkel v. CSS,* 2008 WL 2951276,

*3-4 (E.D. Mich. July 29, 2008)(Lawson, J.)(citing 20 C.F.R. § 404.1560(b)). The use of the VE in this case was particularly warranted, given that the Appeals Council remand order required him to take vocational testimony in determining whether Plaintiff was capable of performing her past relevant work (Tr. 104-105).

Plaintiff also argues that the ALJ posed a "result-oriented" hypothetical question for the purposes of eliciting testimony that she was capable of work as a shuttle driver. In support of this argument, she points out that the original hypothetical question contained a preclusion on "close proximity to coworkers," an impairment that the VE stated would rule out the shuttle driver position[5] (Tr. 60). Plaintiff also notes that the inclusion of a sit/stand option allowing her to change positions every 45 to 60 minutes would eliminate the shuttle driver position (Tr. 61). She contends that a hypothetical limitation of medication-induced drowsiness would also have precluded the former work.

Although the ALJ elicited vocational testimony regarding the proposed limitations, the preclusion on close proximity to coworkers, a sit/stand option, and medication-induced drowsiness are not included in the RFC found in the administrative opinion (Tr. 21). This does not constitute error. To the contrary, because the VE testified, in effect, that without these limitations, Plaintiff could perform her job, the RFC is fully consistent with the vocational testimony (Tr. 21, 60-61).

Moreover, while Plaintiff accuses the ALJ of omitting the hypothetical limitations that did not comport with the former job requirements, the exclusion of these limitations is well supported and explained. "In fashioning the hypothetical question to be posed to the vocational expert, the ALJ 'is required to incorporate only those limitations accepted as

---

[5]However, in response to questioning by Plaintiff's counsel, the VE later stated that the close interaction with coworkers would be limited to "not very often" (Tr. 67).

credible by the finder of fact.'" *Merkel, supra,* at *4 (citing *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993)). Adopting the Psychiatric Review Technique finding that Plaintiff's social limitations were deemed "mild," the ALJ noted that Plaintiff interacted regularly with family and friends and was deemed "friendly and engaging" by treating and examining sources (Tr. 20, 348, 364). The treating record as a whole contains a dearth of evidence suggesting that Plaintiff experienced more than mild social limitations or that she would be unable to behave appropriately while performing her chauffeuring duties. As such, the ALJ did not err by omitting a preclusion on close proximity to coworkers from the RFC. Likewise, Plaintiff's claim that she required position changes every 45 to 60 minutes is not supported by treating records showing that she did not experience gait problems and responded well to physical therapy and steroid injections (Tr. 244, 252, 277, 280). In omitting the limitation of medication-induced drowsiness from the RFC, the ALJ pointed out that the alleged "need to lie down and nap for extended intervals on most days due to pain and medication side effects" was not borne out by the treating records (Tr. 22). Finally, although the VE also provided "Step Five" testimony that Plaintiff was capable of performing a range of other sedentary work, Plaintiff's contention that the ALJ "seemed to deny the claim at both [Step Four and Five]" is without merit. *Plaintiff's Brief* at 10. Despite the vocational testimony pertaining to "other work," the administrative decision states unambiguously that she was found not disabled at Step Four (Tr. 23). Having made a well-supported Step Four determination, the ALJ was not required to continue his inquiry to the fifth step of the sequential analysis. 20 C.F.R. § 416.920(a)(4)(f)

In closing, I note that the transcript supports the finding that Plaintiff experienced some degree of limitation. As such, my decision to uphold the ALJ's findings should not be

read to trivialize her documented limitations.  Nonetheless, the ALJ's determination that the Plaintiff was capable of returning to her former work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

12-12398 LaPorte v. Social Security,Commissioner

Dated: August 14, 2013         s/ R. Steven Whalen
                               R. STEVEN WHALEN
                               UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of this Order was sent to parties of record on August 14, 2013, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager to the
                               Honorable R. Steven Whalen